### Henry Schuerenberg v. Mark Karondo et al.

1. APPEALS—*Duty of Reviewing Court Where There is Evidence Sufficient to Sustain the Verdict and the Case is a Close One.*—Where there is evidence sufficient of itself to sustain the verdict of the jury, although the whole case is a very close one on the facts, it is the duty of the Appellate Court to see only that the jury have been accurately instructed as to the law, and that no material error in the introduction or rejection of evidence has been allowed to get into the record injurious to appellant.

Trespass on the Case.—Appeal from the Circuit Court of Jackson County; the Hon. OLIVER A. HARKER, Judge presiding. Heard in this court at the August term, 1902. Affirmed. Opinion filed March 2, 1903.

R. E. SPRIGG and HERBERT & LEVY, attorneys for appellant.

JAMES H. MARTIN, attorney for appellees.

MR. PRESIDING JUSTICE BIGELOW delivered the opinion of the court.

Appellees recovered a judgment in the Circuit Court of Jackson County, in an action on the case against appellant and one Godfrey Schuerenberg, for $496.40, from which Henry Schuerenberg alone appealed.

Appellant was the owner of a tract of land bordering on the Mississippi river, at which he had constructed a landing and warehouse, where grain was received in sacks to be shipped by steamboat to market at St. Louis. The landing and warehouse were in charge of one Godfrey Schuerenberg, a cousin of appellant.

About August 10, 1900, appellees delivered at the landing

about 400 sacks of wheat, which were shipped to St. Louis and marketed. · The charges for receiving and shipping the wheat were one cent per sack.

The landing was some fifteen miles from a town having a bank, and the custom of doing the business was for the owner of the wheat to give directions to the landing shipper as to how the proceeds of the sale of the wheat should be returned to the owner of it; whether by check or draft, by currency in registered letter, or by currency sent directly to the landing shipper; if the latter, no extra charge was to be made above the one cent per sack for receiving and shipment.

How or in what manner the wheat was sold does not clearly appear from the evidence; nor is it material to know. Appellees chose to have the proceeds of the sale of the wheat sent in money direct to the landing shipper party, and the sum, amounting to $496.40, was so sent, and was received by Godfrey Schuerenberg. It is not contended by appellant that proper care was taken of the money to secure its safety after its receipt at the landing, and it was stolen and lost through the gross negligence of Godfrey Schuerenberg.

The principal, if not the only real, contention of counsel for appellant is, that appellant and his cousin were not copartners in the business of running the landing, but Godfrey was only a tenant of appellant.

Appellant in his testimony says:

" The part that I was to do was to furnish the landing and build the warehouse; he was to tend to all the shipping, receive the freights and so on, and divide the profits equally with me. I call that renting; he run the business that way."

There was no written contract about the matter as to how the business should be run.

Appellees' contention is that Henry and Godfrey were copartners in running the business, and that as such Henry is accountable for Godfrey's negligence in losing the money.

Six witnesses besides the parties to the case, four on the

part of appellees and two on behalf of appellant, were sworn and testified in the case, and we can discover nothing that raises a suspicion that any witness has told anything but the truth. The testimony against appellant's side of the case consists of declarations by both appellant and his cousin Godfrey that they were partners in the business done at the landing; that appellant, though he resided a considerable number of miles from the landing, was often there, apparently looking after the business being done there.

These statements or admissions were contradicted by both of the defendants in the case. The testimony as to the declarations of Godfrey that his cousin Henry and himself were copartners, made out of the presence of appellant, were guardedly admitted by the court to go to the jury, for the probable reason that with Henry's frequent visits to the landing proven, the jury might infer that he had knowledge that Godfrey was making such statements, and was thus holding out to the public that Henry and he were in partnership without any protest from Henry. But if it was error to let the evidence go to the jury the error was fully cured by subsequent instructions given by the court, directly in point.

Appellant's testimony alone comes near to an admission that he was a copartner in the shipping business with his cousin Godfrey. The words of his testimony, "I call that renting," leave the impression on the careful hearer's mind that appellant was not at all certain that he was a landlord and not a copartner.

After he was sued he could not well help thinking that as he had personally left no duty unperformed, therefore he must be right and his adversaries wrong in the matter; and he unconsciously, being governed by his feelings and interests, as most men are, came to an honest conclusion that he was not a copartner with his cousin; but a moment's reflection caused him to doubt when he uttered the damaging argumentative words that he did, and which may have led the jury to believe that his conclusion was wrong, and that he really was what he thought he was not.

There is certainly evidence sufficient by itself to sustain the verdict of the jury, and while the evidence on the part of appellant makes the whole case a very close one on the facts, it is our duty only to see that the jury have been accurately instructed as to the law, and that no material error in the introduction or rejection of evidence has been allowed to get into the record injurious to appellant. This duty we have performed, and find the jury unusually well instructed on each phase of the case, and as we also find no material error in the record of any kind, and that appellant has had a fair trial, it is our duty to leave the case as the jury and the Circuit Court have made it, and as there is nothing in the case but a question of fact, which a jury alone can determine by their verdict, the judgment of the Circuit Court is affirmed.